KEKER, VAN NEST & PETERS LLP
SHARIF E. JACOB - # 257546
sjacob@keker.com
ZAINAB O. RAMAHI - # 332139
zramahi@keker.com
FLORA D. MORGAN - # 359733
fmorgan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Third Parties NVentures, LLC and NVIDIA Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE SUBPOENAS TO NVENTURES, LLC AND NVIDIA CORPORATION,

Case No. TBA

**THIRD PARTY NVENTURES' NOTICE OF MOTION AND MOTION TO QUASH RULE 30(B)(6) SUBPOENA TO NVENTURES OR, ALTERNATIVELY, FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**

Trial Date: N/A

**REDACTED - FILED UNDER SEAL**

**NOTICE OF MOTION TO QUASH**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, at a date, time, and location to be determined following assignment of this proceeding, Third Party NVentures, LLC will and hereby does move the United States District Court for the Northern District of California, pursuant to Federal Rules of Civil Procedure 26, 30, and 45, for an order quashing (or in the alternative, modifying) Plaintiffs' Subpoena to Testify in Civil Action *UMG Recordings, Inc. et al. v. Suno, Inc.* No. 1:24-cv-11611 (FDS), currently pending in the United States District Court for the District of Massachusetts.

This motion is based upon this notice and motion, the accompanying Memorandum of Points and Authorities, the Declaration of Sharif Jacob, the Proposed Order, all pleadings and papers filed in this action, and any other matters the Court may properly consider by judicial notice or otherwise.

Dated: November 10, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Sharif E. Jacob*

SHARIF E. JACOB
ZAINAB O. RAMAHI
FLORA D. MORGAN

Attorneys for Third Parties NVentures, LLC and NVIDIA Corporation

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. NVentures' separate and limited relationship with Suno .......... 3

B. NVentures' response to Plaintiffs' first subpoena .......... 3

C. Plaintiffs' Rule 30(b)(6) subpoena to NVentures .......... 4

D. NVentures' efforts to resolve the dispute and the remaining topics .......... 4

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. The Subpoena improperly burdens a passive nonparty investor with discovery available from Suno and other less burdensome sources. .......... 6

B. The subpoena's broad topics fail to identify matters for examination with reasonable particularity. .......... 8

C. The NVentures Deposition Subpoena improperly seeks expert opinions from NVentures. .......... 10

V. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2012 WL 12898829 (N.D. Cal. Oct. 19, 2012)....7, 8

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014)....5, 6

*Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901 (N.D. Cal. Jan. 27, 2012)....9, 10

*Bartz v. Anthropic PBC*, No. 24-cv-05417-WHA (N.D. Cal. June 23, 2025)....11

*Concurrent Ventures, LLC v. Advanced Micro Devices, Inc.*, 2026 WL 2445547 (N.D. Cal. Aug. 19, 2026)....9, 10

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646 (9th Cir. 1980)....5

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002)....6

*Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017)....8

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015)....1, 10, 11

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)....2, 10, 11

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007)....1, 2, 7

*In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25-md-3143-SHS-OTW (S.D.N.Y. Sept. 23, 2026)....11

*Sci. Applications and Rsch. Assocs. (SARA), Inc. v. Zipline Int'l*, 2024 WL 3925704 (N.D. Cal. Aug. 23, 2024)....8

*U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364 (9th Cir. 1982)....5

*UMG Recordings, Inc. v. Suno, Inc.*, Case No. 1:24-cv-11611-FDS (D. Mass.)....2, 4

*UMG Recordings, Inc. v. Uncharted Labs, Inc.*,
No. 25-mc-80194-KAW (N.D. Cal. Sept. 9, 2025) .... 6, 10

*Visto Corp. v. Smartner Info. Sys., Ltd.*,
2007 WL 218771 (N.D. Cal. Jan. 29, 2007) .... 2, 6, 8

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 2929439 (N.D. Cal. July 7, 2017) .... 6

**Federal Statutes**

Digital Millennium Copyright Act .... 2

**Rules**

Fed. R. Civ. P. 26 .... 2, 5, 6

Fed. R. Civ. P. 30 .... 4, 7, 8, 10

Fed. R. Civ. P. 45 .... *passim*

Fed. R. Evid. 902(11) .... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Third-party NVentures, LLC ("NVentures") respectfully seeks an order quashing Plaintiffs' deposition subpoena. Plaintiffs' claims in the underlying litigation concern Suno Inc.'s ("Suno") alleged acquisition and use of copyrighted sound recordings to train its generative-AI music service. NVentures had no role in that conduct. It did not select, acquire, supply, or use Suno's training data, develop Suno's models, or operate its service. NVentures' only role was to serve as an independent investor in Suno. In fact, NVentures was a minority investor in Suno's November 2025 Series C financing, which closed more than a year after the underlying action began. It holds no board, observer, or advisory position with Suno. Its limited investment does not justify making it a collateral source of testimony about Suno's technology, business, and potential effects on the music industry.

NVentures has already responded extensively to Plaintiffs' discovery. After months of negotiations, collection, and review, NVentures produced 6,324 documents comprising 28,194 pages. Plaintiffs identified no deficiency in that production before demanding corporate testimony on thirteen topics. Nor have they identified a discrete factual question requiring NVentures' testimony that cannot be answered by Suno, the existing documents, or other less burdensome sources. To the extent Plaintiffs need authentication of NVentures' documents, NVentures has offered, and Plaintiffs have agreed to accept, an appropriate certification in place of deposition testimony. *See Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218 (N.D. Cal. 2015) (quashing nonparty deposition subpoena where a custodian's certification authenticated the produced records under Federal Rule of Evidence 902(11), rendering further testimony "duplicative and unnecessarily burdensome").

Plaintiffs nevertheless demand testimony about NVentures' dealings with Suno, Suno's investment materials and training data, licensing economics, growth, markets, and litigation risks. The underlying facts concerning these subjects are available from Suno. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena directed to investment firm where the discovery was principally available from defendants and the requesting

party failed to show that the subpoena would yield unique material evidence). And to the extent Plaintiffs seek testimony about NVentures' investment or analysis that it never shared with Suno, that testimony is irrelevant. *See Visto Corp. v. Smartner Info. Sys., Ltd.*, 2007 WL 218771, at *4 (N.D. Cal. Jan. 29, 2007) (declining to compel an investor's internal analyses where the requesting party failed to establish their independent relevance or identify underlying information unavailable from the party or public sources).

Considered together, these demands would turn a passive minority investor into a source of testimony about the defendant's conduct and the economics of an entire industry. Plaintiffs should obtain testimony about the defendant's conduct from the defendant. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Nidec*, 249 F.R.D. at 577 ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). And Plaintiffs should seek economic opinions about the music industry from an expert witness. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003) (affirming order quashing nonparty subpoena and observing that demands for market information appeared to seek expert testimony); Fed. R. Civ. P. 45(d)(3)(B)(ii). The Court should quash the Subpoena in its entirety.

## II. BACKGROUND

The underlying litigation is pending in the United States District Court for the District of Massachusetts. *UMG Recordings, Inc. v. Suno, Inc.*, Case No. 1:24-cv-11611-FDS (D. Mass.). Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment allege that they own or exclusively control copyrights and other federal rights in numerous sound recordings. *Id.*, ECF No. 277 (First Amended Complaint or "FAC"), ¶¶ 17–21. They assert claims against Suno for direct infringement of pre- and post-1972 sound recordings and for circumvention of technological measures under the Digital Millennium Copyright Act. *Id.* ¶¶ 84–106.

Plaintiffs allege that Suno copied copyrighted sound recordings and ingested those copies into its generative-AI models as training data. *Id.* ¶¶ 7, 9–11, 36–43. They further allege that Suno obtained certain recordings by "stream ripping" them from YouTube and circumventing technological measures designed to prevent unauthorized downloading. *Id.* ¶¶ 7, 45–52, 100–06.

Plaintiffs also allege that certain outputs generated through testing Suno's service resemble specific copyrighted recordings, which they contend demonstrates that those recordings were included in Suno's training data. *Id.* ¶¶ 11, 53–61. Suno denies liability and contends, among other things, that its use of recordings for AI training constitutes fair use. Plaintiffs seek damages and injunctive relief.

NVentures is not a defendant. Plaintiffs do not allege that it copied their recordings, supplied training data to Suno, developed Suno's models, or participated in the conduct underlying their claims.

**A. NVentures' separate and limited relationship with Suno**

NVentures is a wholly owned subsidiary of NVIDIA Corporation and serves as its venture-capital arm. Declaration of Sharif E. Jacob ("Jacob Decl.") ¶ 4, Ex. A. It participated as a passive minority investor in Suno's $250 million Series C financing round, which closed in November 2025—more than a year after Plaintiffs filed the underlying action. *Id.* ¶ 5, Ex. B. Menlo Ventures led the round, with participation from Lightspeed, Matrix, and NVentures. *Id.* ¶ 5, Ex. B. [redacted] *Id.* NVentures was a minority investor in that round and did not lead the financing. *Id.* NVentures made no other investment in Suno.

NVentures does not operate Suno, develop its products, or hold a board, observer, or advisory position. *Id.* Its relationship with Suno is that of a passive minority investor. *Id.*

**B. NVentures' response to Plaintiffs' first subpoena**

On December 4, 2025, Plaintiffs served NVentures with a subpoena seeking documents concerning its investment in and communications with Suno. *Id.* ¶ 6, Ex. C. Although directed to NVentures, the subpoena required a coordinated collection of potentially responsive records maintained by NVentures and NVIDIA. *Id.* ¶ 7. The parties negotiated the scope of collection and search terms for months. *Id.* ¶¶ 7–8, Ex. D.

On August 11, 2026, NVentures produced 6,324 documents comprising 28,194 pages responsive to the subpoena. *Id.* ¶ 9. Before serving their deposition subpoena, Plaintiffs

identified neither a deficiency in that production nor a particular document requiring clarification through corporate testimony. *Id.* ¶ 10.

**C. Plaintiffs' Rule 30(b)(6) subpoena to NVentures**

After the litigation had been pending for two years, Plaintiffs served NVentures with a subpoena dated August 17, 2026, commanding it to designate one or more representatives to testify on September 29, 2026—the day before the then-scheduled close of fact discovery.[1] *Id.* ¶ 11, Ex. E (the "NVentures Deposition Subpoena"). As served, the NVentures Deposition Subpoena contained thirteen topics covering the period from January 1, 2022 through the present. *Id.* The topics address NVentures' relationship with Suno; its November 2025 investment and the materials Suno supplied; Suno's training data; NVentures' investment diligence; licensing costs and their potential effects on Suno's business; Suno's growth, markets, and potential effects on the music industry; litigation communications; NVentures' public statements; and authentication of its production. *Id.*, Topics 1-13. Several topics seek NVentures' generalized awareness, knowledge, and understanding of Suno's technology, business, and markets. *Id.*, Topics 5, 8, 11.

**D. NVentures' efforts to resolve the dispute and the remaining topics**

NVentures attempted in good faith to resolve this dispute before seeking judicial relief. On September 8, 2026, it served written objections addressing relevance, overbreadth, duplication, proportionality, privilege, and undue burden. *Id.* ¶ 13, Ex. G. The parties met and conferred by videoconference on September 25, 2026, and again on October 30, 2026, and continued their discussions through subsequent correspondence. *Id.* ¶ 14.

Counsel explained that NVentures had already undertaken months of collection and review and produced thousands of documents without an identified deficiency. *Id.* Counsel also explained that Suno was the appropriate source of testimony about its own training data, copyright practices, operations, growth, and markets. *Id.* NVentures offered an appropriate authentication certification to eliminate any need for a deposition solely for that purpose. *Id.*

---

[1] The Court subsequently extended the deadline to complete already-noticed third-party depositions unrelated to Plaintiffs' Section 1201 claim to November 20, 2026. *See UMG Recordings, Inc. v. Suno, Inc.*, Case No. 1:24-cv-11611-FDS (D. Mass), Oct. 30, 2026 order granting ECF No. 290; *id.*, ECF No. 290 ¶¶ 22-25 & p.5.

During those discussions, Plaintiffs amended Topics 2, 4, 6, 8, 10, and 11. Those amendments address, respectively, pre-investment business relationships; categories of investment materials supplied by Suno; specified areas of investment diligence; existing licensing-related analyses; existing internal growth analyses; and NVentures' knowledge of the market for Suno's service and outputs. *Id.* ¶¶ 15, 22, Ex. H. Plaintiffs also amended Topic 12 to seek: "Your communications with Suno concerning the risk of litigation related to Suno's training data." *Id.* ¶ 22(l). Topics 3, 5, and 9 remain as served. *Id.* ¶ 22(c), (e), (i). Plaintiffs have withdrawn Topics 1 and 7. *Id.* ¶ 22(a), (g). Plaintiffs have agreed to accept an authentication declaration or certification in place of a witness for Topic 13. *Id.* ¶ 22(m). In correspondence dated October 30, 2026, Plaintiffs confirmed that they were seeking testimony on Amended Topics 2, 4, 6, 8, 10, 11, and 12, and Topics 3, 5, and 9 as served. *Id.* ¶ 20, Ex. M.

NVentures repeatedly asked Plaintiffs to identify the discrete factual questions remaining after its production, the documents to which those questions relate, and why the information could not be obtained from Suno or the documents themselves. *Id.* ¶ 16, Ex. I. Plaintiffs have not identified any such document or unanswered factual question. *Id.* ¶ 25.

## III. LEGAL STANDARD

A Rule 45 subpoena is subject to Rule 26's relevance and proportionality requirements. Fed. R. Civ. P. 26(b)(1). Even relevant discovery must be limited when it is unreasonably cumulative, duplicative, or obtainable from a more convenient, less burdensome, or less expensive source. Fed. R. Civ. P. 26(b)(2)(C).

These limitations apply with particular force when discovery is directed to a nonparty. When a nonparty is the target of discovery, courts should determine whether the discovery is truly necessary. *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Nonparty witnesses cannot control the scope of litigation and "should not be forced to subsidize an unreasonable share of the costs" of litigation to which they are not parties. *U.S. v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982). Courts accordingly weigh the burden on the subpoenaed nonparty against the value of the requested information, considering its relevance, the requesting party's need, and the breadth of the demands. *Amini Innovation Corp. v.*

*McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409–10 (C.D. Cal. 2014). Courts are "particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Id.* at 410. Rule 45 requires the issuing party to "take reasonable steps to avoid imposing undue burden or expense," and ***requires*** the Court, on a timely motion, to quash or modify a subpoena imposing undue burden. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). Nonparty discovery should therefore be narrowly directed to specific informational needs. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017).

Alternatively, upon a particularized showing of good cause, the Court may issue a protective order forbidding discovery or prescribing its permissible scope and terms to protect against undue burden or expense. Fed. R. Civ. P. 26(c)(1); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). A motion seeking that relief must certify the movant's good-faith effort to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1).

## IV. ARGUMENT

### A. The Subpoena improperly burdens a passive nonparty investor with discovery available from Suno and other less burdensome sources.

"Courts have declined to require discovery of internal analyses that led to the decision to invest in a company where there was nothing in the record to suggest that the [investor] had data or documents not available from the company or public sources." *UMG Recordings, Inc. v. Uncharted Labs, Inc.*, No. 25-mc-80194-KAW, ECF No. 28, at 3:14-17 (N.D. Cal. Sept. 9, 2025). Discovery into an investor's internal investment analysis is typically irrelevant. *Visto Corp.*, 2007 WL 218771, at *4. While the underlying data or actual commercial success may be relevant to a theory of damages, the investor's "opinions," "thought processes," and "private conclusions" often fall outside the bounds of relevance. *Id.* Compelling production of such information from investors threatens to supplant the role of testifying experts in the litigation. *Uncharted Labs*, No. 25-mc-80194-KAW, ECF No. 28, at 3:19-21. This is especially true where the target of the subpoena is a passive investor without a board seat whose role was simply deciding whether to invest. *Id.* at 4:20-21. The deposition of such an investor is particularly inappropriate where the investor has already made a substantial production, and the plaintiff has not shown why the

investor's existing production was insufficient or why additional information could not be obtained from the defendant or public sources. *Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2012 WL 12898829, at *3–4 (N.D. Cal. Oct. 19, 2012).

The Court should quash the subpoena to NVentures. NVentures was a minority investor in Suno's Series C financing, holds no board, observer, or advisory position in Suno, and had no role in Suno's training data or models. Jacob Decl. ¶ 5, Ex. B. Plaintiffs have made no effort at all to explain what information they cannot obtain from the voluminous production NVentures already made, or from Suno. *See GoDaddy.com*, 2012 WL 12898829, at *3 (denying a motion to compel Rule 30(b)(6) testimony where the movant failed to explain why it could not obtain information from the non-movant's document production); *Nidec*, 249 F.R.D. at 577 (quashing an investor subpoena where the discovery was available from defendants). Amended Topic 2 concerns pre-investment business relationships with Suno and identified Suno personnel, while Topic 3 concerns the Series C financing. Jacob Decl. ¶ 22(b)-(c). Suno can explain its participation in those relationships and the transaction's terms, negotiations, and representations. Amended Topic 4 seeks categories of investment materials Suno supplied, which Suno can obviously identify. *Id.* ¶ 22(d). Amended Topic 12 now seeks communications with Suno concerning litigation risk associated with Suno's training data—communications in which Suno necessarily participated. *Id.* ¶ 22(l). Topic 5 concerns the contents, acquisition, sources, and development of Suno's training data, and Amended Topic 6 reaches diligence concerning that data, licensing, copyright and business risks, markets, and potential industry effects. *Id.* ¶ 22(e)-(f). Suno acquired and used the data and can explain its own practices, licensing efforts, business plans, and representations during diligence.

To the extent Amended Topics 8 and 10 seek the underlying information supporting existing licensing-related and growth analyses, Suno can supply its licensing, financial, performance, and growth information, while Plaintiffs possess information about their own licensing practices. Likewise, the underlying market information implicated by Topic 9 and Amended Topic 11 can be obtained from Suno. Suno is best positioned to describe its intended markets, users, and commercial activities. Plaintiffs are best positioned to testify about the

impact of artificial intelligence, if any, on their own businesses and markets. Plaintiffs identify no factual gap in those sources requiring additional corporate testimony from NVentures.

To the extent Plaintiffs seek testimony about internal analyses that NVentures did not share with Suno, that testimony is irrelevant. *See Sci. Applications and Rsch. Assocs. (SARA), Inc. v. Zipline Int'l*, 2024 WL 3925704, at *5–6 (N.D. Cal. Aug. 23, 2024); *Visto Corp.*, 2007 WL 218771, at *4. As courts in this District have made clear, the relevance of underlying commercial, performance, and royalty data does not itself establish the relevance of an investor's private assessments of that information. *Visto Corp.*, 2007 WL 218771, at *4. Yet that is exactly what Plaintiffs seek. Topic 3 seeks NVentures' internal reasons for investing; Amended Topic 6 seeks its independent diligence assessments concerning training data, licensing, copyright and business risks, markets, and potential industry effects; Amended Topic 8 seeks existing analyses of licensing costs, availability, and terms and their effects on Suno's business model, margins, growth, and valuation; and Amended Topic 10 seeks existing internal growth analyses. Topic 9 and Amended Topic 11 similarly seek NVentures' opinions about Suno's effects on the music industry and the market for its services and outputs. NVentures' confidential, private investment analyses are proprietary and entirely irrelevant. Moreover, NVentures already produced documents relating to those analyses. Requiring corporate testimony on those same topics would therefore impose a duplicative and unjustified burden. *GoDaddy.com*, 2012 WL 12898829, at *5.

The subpoena seeks to force NVentures to provide information available from Suno, existing records, or public sources without an identified need for additional testimony. *See Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309, at *6 (N.D. Cal. Dec. 8, 2017); *GoDaddy.com*, 2012 WL 12898829, at *4–5; *Visto Corp.*, 2007 WL 218771, at *4. To the extent it seeks information NVentures did not provide to Suno, that information is irrelevant (and available in the existing document production). The Court should therefore quash the subpoena.

**B. The subpoena's broad topics fail to identify matters for examination with reasonable particularity.**

Several topics independently fail Rule 30(b)(6)'s particularity requirement. Rule 30(b)(6) requires that matters for examination be described "with reasonable particularity." Fed. R. Civ. P.

30(b)(6). A topic must define the substantive matters requiring preparation; merely naming a broad field of corporate knowledge does not suffice. *See Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 & n.6 (N.D. Cal. Jan. 27, 2012). In *Concurrent Ventures, LLC v. Advanced Micro Devices, Inc.*, the court struck catch-all topics encompassing every aspect of the defendants' business or litigation and required particularized replacements. 2026 WL 2445547, at *1 (N.D. Cal. Aug. 19, 2026).

Topics 5 and 9 and Amended Topics 6 and 11 fail that standard. Each identifies a broad subject without sufficiently defining the substantive matters on which NVentures must prepare a corporate witness.

Topic 5 seeks NVentures' awareness, knowledge, and understanding of the contents, acquisition, sources, and development of Suno's training data. Jacob Decl. ¶ 11, Ex. E, Topic 5. It identifies no dataset, model, acquisition practice, or particular representation requiring examination. *See id.* Applied to an investor that neither assembled the datasets nor developed the models, the topic leaves NVentures to determine which aspects of Suno's technical activities its witnesses must investigate and master.

Amended Topic 6 similarly encompasses diligence across training data and licensing, copyright risks, business risks, markets, and potential effects on the music industry. *Id.* ¶ 22(f). Those categories span much of Suno's technology and commercial prospects. They identify no particular assessment, representation, or disputed factual question requiring testimony. Preparing an organizational witness across those fields would require an extensive investigation into the investment process without a sufficiently defined focus.

Topic 9 and Amended Topic 11 extend the same problem to industry and market knowledge. Topic 9 seeks NVentures' general understanding of Suno's effects on the music industry, while Amended Topic 11 concerns its awareness, knowledge, and understanding of the market for Suno's service and outputs. *Id.* ¶ 22(i), (k). Neither identifies the particular market proposition, competitive effect, observation, or commercial practice the designee must address. An examination concerning an investor's generalized understanding of an industry is materially broader than testimony about a defined transaction or particular communication.

Topics 5 and 9 and Amended Topics 6 and 11 thus leave NVentures without sufficiently defined matters on which to prepare its designees. The subpoena's expansive affiliate definition and temporal scope compound that uncertainty. These objections concern the substantive scope of the examination and the preparation it requires. The Court should strike those demands. *See Apple*, 2012 WL 1511901, at *2 & n.6; *Concurrent Ventures*, 2026 WL 2445547, at *5.

**C. The NVentures Deposition Subpoena improperly seeks expert opinions from NVentures.**

Rule 45(d)(3)(B)(ii) permits the Court to quash or modify a subpoena requiring disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." A party may not conscript a nonparty to provide specialized analysis merely because that analysis would assist its case, particularly where it can retain its own expert. *Mattel*, 353 F.3d at 813–14; *Intermarine*, 123 F. Supp. 3d at 1218. To obtain testimony protected by Rule 45(d)(3)(B)(ii), the requesting party must show a substantial need that cannot otherwise be met without undue hardship and ensure reasonable compensation. Fed. R. Civ. P. 45(d)(3)(C). Moreover, restricting discovery to an existing analysis does not, by itself, eliminate Rule 45's protection. In *Mattel, Inc. v. Walking Mountain Productions*, the Ninth Circuit affirmed an order quashing a Rule 30(b)(6) subpoena directed to a nonparty museum, observing that demands concerning the market for the defendant's works appeared to seek expert testimony. 353 F.3d at 813–14. The court relied in part on Rule 45's protection against compelling evidence from unretained experts. *Id.* at 814; *see also Uncharted Labs, Inc.*, No. 25-mc-80194-KAW, ECF No. 28, § III.A, at 3:14-22 (characterizing independent investment analyses as akin to expert reports).

Amended Topics 8 and 11 and Topic 9 implicate those protections insofar as they demand specialized economic and market analysis extending beyond facts learned through NVentures' particular dealings with Suno. Amended Topic 8 reaches the economic effects of licensing arrangements; Topic 9 reaches Suno's effects on the music industry; and Amended Topic 11 reaches the market for Suno's service and outputs. Jacob Decl. ¶ 22(h), (i), (k). Plaintiffs have not shown a substantial need to obtain specialized economic and market opinions from NVentures

rather than experts retained to address those subjects. Indeed, plaintiffs in other AI copyright litigation have obtained market-harm opinions through the ordinary expert-discovery process. *See In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25-md-3143-SHS-OTW (S.D.N.Y. Sept. 23, 2026), ECF No. 2046 at 4; *see also Bartz v. Anthropic PBC*, No. 24-cv-05417-WHA (N.D. Cal. June 23, 2025), ECF No. 231 at 4 (citing plaintiffs' expert declaration concerning agreements to license books for AI training). The Court should quash Amended Topics 8 and 11 and Topic 9 insofar as they seek unretained expert opinions or information protected by Rule 45(d)(3)(B)(ii). *See Mattel*, 353 F.3d at 813–14; *Intermarine*, 123 F. Supp. 3d at 1218–19.

## V. CONCLUSION

For the foregoing reasons, NVentures respectfully requests that the Court quash the Subpoena in its entirety, or, alternatively, issue a protective order.

Dated: November 10, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Sharif E. Jacob*
SHARIF E. JACOB
ZAINAB O. RAMAHI
FLORA D. MORGAN

Attorneys for Third Parties NVentures, LLC and NVIDIA Corporation